# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **OLLIE MELLON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:07CV00054 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Vernon M. Williams, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Taryn Jasner, Special Assistant United States Attorney, Social Security Administration, Office of the General Counsel, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Ollie Mellon filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-

1383(f) (West 2003 & Supp. 2008).  Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision.  If substantial evidence exists, the court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed.  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Id.*

The plaintiff applied for DIB and SSI on December 9, 2003, alleging disability beginning December 15, 2002, due to back and neck pain and problems with his right arm, left leg and knee, and hearing.  (R. at 56-59, 65-66.)  The claims were denied initially on May 13, 2004 (R. at 32, 34-36), and upon reconsideration on July 13, 2004 (R. at 33, 41-43).

On August 6, 2004, the plaintiff filed a request for a hearing before an administrative law judge ("ALJ").  (R. at 45.)  A hearing was held on June 17, 2005. (R. at 256-78.)  The plaintiff, who was present and represented by counsel, testified at the hearing. (*Id.*)  By decision dated August 3, 2005, the ALJ denied the plaintiff's claims for DIB and SSI.  (R. at 13-23.)

-2-

Case 2:07-cv-00054-JPJ-PMS   Document 17   Filed 02/18/09   Page 2 of 18   Pageid#: 60

The plaintiff then filed a request for review with the Social Security Administration's Appeals Council on September 12, 2005 (R. at 12), but by a notice dated August 30, 2007, the Appeals Council denied the plaintiff's request for review (R. at 5-9). Thus, the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is now ripe for decision.

II

The record reveals the following facts.

The plaintiff was fifty-one years old at the time of the ALJ's decision, making him an individual closely approaching advanced age under the Commissioner's Regulations. *See* 20 C.F.R. § 404.1563(d) (2008). He completed the seventh grade and has past work experience as a handyman, a forklift operator, and as a welder. (R. at 66, 75-79, 110, 260-63.)

The plaintiff seeks disability due to dizziness; hearing problems; pain in his back, neck, and left leg; and weakness, tingling and numbness in his right arm. (R. at 65-66, 256-73.) He first began experiencing problems in 1997 after a car accident. (R. at 126.)

-3-

The plaintiff stopped working in December 2002. (R. at 264.) On April 14, 2003, he visited an emergency room complaining of lower back and hip pain. The staff physician's clinical impression was that the plaintiff was suffering from sciatica symptoms, but noted the need for an MRI to confirm this.

Between December 31, 2003, and July 8, 2004, the plaintiff visited primary care physician Abdul-Latief Almatari, M.D., six times complaining of headaches, sinus trouble, back, neck, left leg, and right arm pain, and insomnia. (R. at 160-174.) Treatment records indicate that the plaintiff had a mildly decreased range of motion in the neck, slightly decreased strength in the left lower extremity, and had difficulty walking on his heels or toes, but had normal strength, sensation, reflexes, and pulsation in the upper extremities and right lower extremities and a normal gait. (R. at 164, 167, 169-70.) Dr. Almatari also noted no abnormalities in his clinical examination of the plaintiff's head, eyes, ears, and nose and stated that the plaintiff had normal hearing. (R. at 160, 166, 168, 170.) X rays showed mild degenerative changes in the cervical spine and significant disk disease of the lumbosacral joint. (R. at 168.) Dr. Almatari prescribed medications for the plaintiff, advised him to avoid heavy lifting, and encouraged him to exercise and maintain a healthy lifestyle. (R. at 161, 164-65, 167-69.)

On April 13, 2004, Dr. Almatari noted that the plaintiff was "doing well." (R. at 162-63.) However, when the plaintiff returned on July 8, 2004, he reported continued back, neck, and left knee pain and admitted that he had stopped taking his medications even though Dr. Almatari had arranged for him to receive these free of charge. (R. at 160.) At this visit, Dr. Almatari referred the plaintiff to an orthopeadist for his back and left knee pain. (*Id.*)

In October 2004, the plaintiff visited orthopedist, Nathan E. Doctry, M.D. (R. at 206-11.) An MRI and X rays revealed mild degenerative disc disease, central canal stenosis, disc bulging, and mild spondyosis of the lumbar spine as well as mild spondyosis of the cervical spine. (R. at 210-11.) Dr. Doctry diagnosed the plaintiff with lumbar spinal stenosis and opined that "these problems will prevent [the plaintiff] from doing any strenuous activity." (R. at 206.) He recommended neurological and pain management referrals. (R. at 209.)

Between November 4, 2004, and February 1, 2005, the plaintiff visited Michael W. Wheatley, M.D., four times for treatment of pain in his back, neck, right leg, right arm and left hand. (R. at 218-21.) In discussing the plaintiff's medical history, Dr. Wheatley noted that the plaintiff had spinal fusion surgury in the cervical region two

years earlier.[1] (R. at 220.) Based on his own observations and the MRI and X rays ordered by Dr. Doctry, he diagnosed the plaintiff with "relatively mild" lumbar spinal stenosis and degenerative disk disease. (R. at 218, 221.) Dr. Wheatley prescribed pain medication and muscle relaxants. (R. at 220-21.) On January 11, 2005, the plaintiff requested additional pain medication, but Dr. Wheatley determined that this was not necessary. (R. at 218.) On February 10, 2005, the plaintiff was seen by Dawn M. Short, a nurse practitioner in Dr. Wheatley's office. (R. at 216-17.) She noted that the plaintiff had a decreased range of motion in his back, but that straight leg raises were negative and sensation in all extremities appeared intact. (*Id.*)

Dr. Wheatley completed an assessment of the plaintiff's physical abilities on April 13, 2005. (R. at 222-25.) He determined that the plaintiff retained the capacity to lift or carry up to twenty-five pounds occasionally and up to ten pounds frequently; to stand or walk for a total of two hours in an eight-hour workday and up to an hour without interruption; to sit for a total of two hours in an eight-hour workday and up to a half hour without interruption. (R. at 222.) He further determined that the plaintiff could never climb, stoop, kneel, balance, crouch, or crawl, had limitations in his ability to reach, handle, feel, push, pull, and hear, and should avoid heights,

---

[1] Medical records associated with this surgery do not appear in the administrative record.

-6-

moving machinery, temperature extremes, chemicals, fumes, and vibration. (R. at 223.) Dr. Wheatley also assessed the plaintiff's mental abilities, noting that he had a poor ability to deal with work stresses; understand, remember, and carry out complex job instructions; and behave in an emotionally stable manner. (R. at 224-25.)

At the request of the state agency, the plaintiff was seen by consultative examiner Kevin Blackwell, D.O., on April 23, 2004.

On October 19, 2005, the plaintiff had a hearing before the ALJ. (R. at 280-330.) At this time, the plaintiff's counsel provided the ALJ with a pre-hearing memorandum that listed twelve proposed severe impairments: asthmatic bronchitis, chronic obstructive pulmonary disease, degenerative disc disease, chronic neck and back pain, irritable bowel syndrome, bilateral carpal tunnel syndrome, migraine headaches, positional vertigo with episodes of syncope, stress anxiety disorder, reflux esophagitis, bursitis in the left shoulder, and synotenovitis in the right shoulder. (R. at 135-38, 283.) This memorandum also noted that the plaintiff had surgery for his esophagitis in January 2005, but that the hospital records could not be located. (R. at 137, 284.)

At this hearing, the plaintiff testified about his work history, alleged impairments, and functional limitations. He stated that he had difficulty climbing

-7-

stairs and walking more than 100 yards without resting, and lifting more than ten pounds. (R. at 300, 304.) His reported activities of daily living included watching television, sitting and talking with visitors, playing computer games, walking to the mailbox, fixing sandwiches for lunch, attending church weekly and driving occasionally, using his left hand to steer. (R. at 306, 309-12.) He testified that he has coughing spells lasting up to three or four hours in length and must lay down for three or more hours each day because of fatigue. (R. at 302.) The ALJ noted that the plaintiff had been coughing during the hearing. (R. at 313.)

A vocational expert also testified at this hearing. (R. at 313-329.) He classified the plaintiff's past relevant work in the mining industry as medium to heavy, in terms of exertion, and skilled, but noted that none of these skills were transferable outside the mining industry. (R. at 317-19.) The ALJ asked the vocational expert to consider various hypothetical situations, including whether jobs existed in significant numbers for an individual the same age as the plaintiff, with his same education and background, who was restricted to a range of light work. (R. at 319-29.) Specifically, the ALJ limited the physical abilities of this hypothetical individual to lifting and carrying up to twenty pounds occasionally and ten pounds frequently; sitting up to six hours, standing up to six hours, and walking up to four hours, during an eight-hour workday; and occasionally climbing stairs and ramps; but

noted that this hypothetical individual could never climb ladders, ropes, or scaffolds or balance; and must avoid hazards, such as machinery and heights, and all exposure to dust, smoke, fumes, or odors. (R. at 319, 323.)

In response, the vocational expert concluded that the hypothetical individual would be unable to return to any of the work previously performed by the plaintiff. (R. at 319-320.) The vocational expert identified several jobs that could be performed by such an individual, including that of order caller, for which there are 100,000 positions nationally and 2,000 regionally; cashier, for which there are 700,000 positions nationally and 5,000 regionally; and bagger, for which there are 200,000 positions nationally and 4,000 regionally. (R. at 320-23.)

After the ALJ rendered his decision, the plaintiff submitted additional medical evidence to the Appeals Council, including treatment records from Cumberland Mountain Community Services where the plaintiff was seen in January 2006 for depression (R. at 262-68), additional records from Dr. Sutherland completed between September 8, 2005, and May 8, 2006 (R. at 269-75, 279B-C), and notes from a diagnostic interview completed by a licensed clinical psychologist on March 28, 2003 (R. at 277-79). The Appeals Council determined that these new records were either duplicative or covered a period beyond that under consideration by the ALJ and

concluded that these did not provide a basis for changing the ALJ's decision. (R. at 12.) [2]

III

A plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. A plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

The Commissioner applies a five-step sequential evaluation process in assessing DIB claims. The Commissioner considers whether the claimant (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present

---

[2] It appears that while most of this additional evidence was duplicative or covered the period after the ALJ's decision, the diagnostic interview completed by the psychologist was new evidence relating to the period prior to the ALJ's decision, and was potentially relevant. However, this evidence concerns the plaintiff's mental state, an aspect of the ALJ's decision that the plaintiff did not challenge.

-10-

in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4) (2007).  If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases.  *See id*.; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard has been applied.  42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  If substantial evidence exists, the final decision of the Commissioner must be affirmed.  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642.  It is the role of the ALJ to resolve evidentiary conflicts, including inconsistences in the evidence.  It is not the role of this court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

After considering the treatment records and opinions of medical professionals and the testimony of the plaintiff and the vocational expert, the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number

-11-

of jobs, requiring only light work, in the national economy, and was, therefore, not disabled. (R. at 20-27.) He found that the plaintiff's chronic obstructive pulmonary disease and chronic mechanical back pain constituted severe impairments, but that these did not meet or equal the severity of any listed impairment. (R. at 23-4, 27.) He further found that the plaintiff's arm and hand problems were not severe because they resulted in only a mild reduction in function and that the plaintiff's episodes of loss of consciousness and syncope were not medically determinable because they were not confirmed by a definitive diagnosis based on objective evidence. (R. at 23.) In assessing the plaintiff's residual functional capacity, he determined that the plaintiff was able to lift or carry up to twenty pounds occasionally and ten pounds frequently, to sit or stand for up to six hours each day, walk up to four hours in an eight-hour workday, and to occasionally climb stairs and ramps, but that he could not climb ladders, ropes, or scaffolds or balance and must avoid hazardous areas and environments with dust, fumes, gases or odors. (R. at 25, 27.) Because of these limitations, the plaintiff did not retain the capacity to return to his past work, but could perform a significant number of light jobs, including order caller, cashier, and bagger. (R. at 26, 28.) In reaching his decision that the plaintiff was not disabled, the ALJ found that the plaintiff's testimony "was not fully persuasive regarding his symptomatology and resulting limitations." (R. at 27.)

The plaintiff contends that the ALJ erred in not giving proper weight to the opinion of his treating physician, Dr. Sutherland, and in failing to consider the effects of the plaintiff's hand, arm, and shoulder impairments, chronic fatigue, and loss of consciousness or vertigo in determining his residual functional capacity. (Br. Supp. Pl.'s Mot. Summ. J. 8, 17.)

As the plaintiff states, a treating physician's opinion may be accorded substantial weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). However, if a treating physician's opinion is not supported by clinical evidence or is inconsistent with other evidence of record, it is entitled to significantly less weight. *Id.*; 20 C.F.R. § 404.1527(d)(2). Here, the ALJ properly considered Dr. Sutherland's opinion, but reasonably concluded that it was neither supported by objective medical evidence nor consistent with the other evidence of record and was entitled to very little weight. (R. at 25.)

As discussed above, Dr. Sutherland's treatment records are sparse, often including diagnoses without any recorded clinical observations or diagnostic testing for support. For example he provided no testing or observations to support his diagnoses of migraine headaches, anxiety, chronic fatigue and pain, and vertigo. Dr.

-13-

Sutherland's diagnoses were also often inconsistent with the other medical evidence of record. For example, to support his diagnosis of osteoarthritis and of degenerative disc disease, he noted a decreased range of motion in the plaintiff's lumbar spine and bilateral leg lift of thirty-five degrees. However, this is inconsistent with Dr. Chaudhry's clinical evaluation in which he observed normal range of motion, normal straight leg raises and intact motor, sensory, and cranial nerves. Dr. Sutherland also diagnosed the plaintiff with inflammation and carpal tunnel syndrome of the right hand, despite nerve conduction and EMG studies conducted by Dr. Nelson that produced mostly normal results. I find that the ALJ's decision to accord very little weight to the opinion was Dr. Sutherland was reasonable.

The plaintiff further argues that the ALJ's residual functional capacity determination is not supported by substantial evidence in that he failed to consider the functional limitations caused by the plaintiff's hand, arm, and shoulder impairments, chronic fatigue, and loss of consciousness or vertigo. I find that the ALJ's residual functional capacity determination is supported by substantial evidence because it is completely consistent with the well-supported opinion of Dr. Chaudhry, as well as reported diagnostic tests, and that the ALJ did fully account for all of the plaintiff's alleged functional limitations.

-14-

Case 2:07-cv-00054-JPJ-PMS   Document 17   Filed 02/18/09   Page 14 of 18   Pageid#: 72

The ALJ determined that, despite having severe impairments, the plaintiff retained the capacity to perform a wide range of light work, including lifting up to twenty pounds occasionally and ten pounds frequently; sitting or standing up to six hours each day and walking up to four hours in an eight-hour day; and climbing stairs and ramps occasionally. He limited this range of work to exclude positions requiring climbing ropes, ladders, and scaffolds, balancing, or exposure to hazards or environments with dust, fumes, gases, or odors. This echoes Dr. Chaudhry's opinion regarding the plaintiff's functional capacity.

The plaintiff alleges that he experiences numbness and tingling in his arms and hands, particularly in his right hand, that make it difficult to grip and hold objects. However, Dr. Nelson opined that his clinical examination and diagnostic testing did not explain the plaintiff's alleged symptoms. While the plaintiff described numbness in a radial distribution with more focused symptoms in his right hand, Dr. Nelson found that the plaintiff's responses in clinical testing were not consistent with a radial neuropathy and were similar in the right and left hands. Dr. Nelson noted that the plaintiff's reflexes and arm strength were intact and there was no focal atrophy. The nerve conduction and EMG studies he conducted were largely normal, indicating only that the plaintiff had reduced sensory amplitudes.

-15-

Case 2:07-cv-00054-JPJ-PMS   Document 17   Filed 02/18/09   Page 15 of 18   Pageid#: 73

Likewise, Dr. Chaudhry noted no non-exertional limitations on the plaintiff's ability to use his arms or hands, nor did Dr. Johnson, one of the state agency physicians. The plaintiff relies on the medical opinions of Dr. Sutherland and the other state agency physician, Dr. Hartman, to establish shoulder, arm, and hand impairments that would limit his ability to work. As previously discussed Dr. Sutherland's opinion was reasonably accorded little weight by the ALJ. While Dr. Hartman noted that the plaintiff's medical records included carpal tunnel symptoms in his right hand, he did not list this as a medically determinable impairment and did not explain how the plaintiff's ability to handle with his right hand was limited. Therefore, I conclude that the ALJ did not err in giving greater weight to the opinions of Drs. Nelson and Chaudhry than to that of Dr. Hartman.

The plaintiff also alleges chronic fatigue syndrome that requires him to spend three or more hours per day lying down. The only physician to diagnose chronic fatigue syndrome was Dr. Sutherland, who offered no clinical observations or diagnostic tests in support of this diagnosis. While, Dr. Nelson did note that the plaintiff complained of problems sleeping, a plaintiff's subjective complaints, even if relayed by a doctor, are insufficient to establish a medically determinable impairment. *See Craig*, 76 F.3d at 590 n.2 ("There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain.'").

In addition, in his pre-hearing memorandum the plaintiff proposed twelve severe impairments for the ALJ's consideration, but did not include chronic fatigue syndrome in this list. As there is no objective evidence to support a medically determinable impairment of chronic fatigue, the ALJ did not err in not crediting the plaintiff's subjective statements regarding his fatigue.

Finally, the plaintiff argues that the ALJ erred in concluding that the plaintiff's alleged episodes of loss of consciousness, vertigo, and syncope were not medically determinable. While Dr. Sutherland diagnosed the plaintiff with vertigo with dizziness and syncope, he failed to provide any support in terms of clinical observations or diagnostic tests and so the ALJ reasonably gave little weight to his opinion. Dr. Nelson also treated the plaintiff for these complaints, but his treatment records include only self-reported symptoms and no clinical observations.[3] EEG and MRI tests conducted by Dr. Nelson produced "largely unremarkable" results and did not offer any objective support for these diagnoses. As a precaution, Dr. Nelson prescribed the plaintiff antiepileptic medication and warned him against engaging in dangerous solo activities and driving; however, the plaintiff later reported that he had

---

[3] Because Dr. Nelson never witnessed one of the plaintiff's episodes, he relied exclusively on symptoms reported by the plaintiff and his wife. Dr. Nelson did note, however, that the plaintiff reported having an episode in front of Dr. Sutherland who did not think it was a seizure. (R. at 180.) Dr. Sutherland made no indication in his treatment notes that he had witnessed the plaintiff having an episode of loss of consciousness or symptoms of vertigo or syncope.

-17-

stopped taking this medication and that he continued to drive. Because there is no objective medical evidence to support the plaintiff's alleged episodes of loss of consciousness, vertigo, and syncope, and because the plaintiff's behavior casts doubt on the credibility of his allegations, I believe that the ALJ did not err in finding that these alleged impairments were not medically determinable. Despite so finding, the ALJ did accommodate these allegations in determining the plaintiff's residual functional capacity. He limited the plaintiff to activities that would not require climbing ropes, ladders, or scaffolds, balancing, or exposure to hazards, such as machinery or heights.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's decision denying benefits.

DATED: February 18, 2009

/s/   JAMES P. JONES
Chief United States District Judge

-18-